DONALD J. ENGLISH, APPELLANT-RESPONDENT, v. COLLEGE OF MEDICINE AND DENTISTRY OF NEW JERSEY, RESPONDENT-APPELLANT.

Argued November 22, 1976—Decided March 25, 1977.

*Ms. Sherrie L. Gibble,* Deputy Attorney General, argued the cause for appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. John A. Craner* argued the cause for respondent (*Messrs. Craner, Brennan and Nelson,* attorneys).

PER CURIAM. The plaintiff, Donald J. English, supervisor of the morgue section of the Department of Anatomy of the College of Medicine and Dentistry of New Jersey, was discharged by the College's Board of Trustees because of misconduct in the performance of his duties. On appeal the Appellate Division affirmed the finding of misconduct, but held that the penalty was too harsh. It concluded a one year suspension without pay was appropriate. One Appellate Division judge dissented, finding that the sanction did not constitute an abuse of the Board's discretion. The College appealed to this Court pursuant to *R.* 2:2-1(a).

The formal charge submitted to English specified that he had failed to maintain proper identification of and accurate records with respect to the bodies in the morgue section of the Department of Anatomy. He was advised that he would be given a hearing at which the College would present testi-

mony to support the charge, and he might adduce evidence in his own behalf. English accepted the offer. Hearings were held before Dr. Harold Logan, Associate Dean of the College, on December 2 and 3, 1971. After receipt of the hearing officer's report, the President of the College delineated findings of fact and found English guilty of the charge. He determined that dismissal was warranted. English appealed to the Appellate Division. While this appeal was pending, the College's motion that the matter be remanded and presented to a new independent hearing officer was granted.

A *de novo* hearing was held on June 4, 1974 before retired Judge Victor S. Kilkenny. The parties stipulated that the record consist of the testimony and evidence presented at the prior hearing. Judge Kilkenny sustained the charge of serious neglect of duty and recommended discharge. The Board of Trustees affirmed and adopted his findings. It permanently terminated English's appointment as of January 28, 1972.

█ The record is abundantly clear, indeed English conceded, that there was a lack of proper identification of bodies and failure of record keeping. The factual dispute concerned the question of who was responsible for performing those functions. Prior to October 1970, English, who had been the Senior Morgue Technician in charge of the morgue, maintained all records and identification. In October, English was requested to assist the Audio Visual Department. Although he was not relieved of his duties as Senior Morgue Technician, and he knew that his assistant was incapable of maintaining the necessary identification and record keeping, English neglected these responsibilities. Ample evidence supported the conclusions of both hearing officers and the Board of Trustees that English failed to perform his duties during the period in question as supervisor of the morgue.

But in any case, under the circumstances here English's status was such that he cannot complain. As an employee of the College of Medicine and Dentistry of New Jersey, a state institution, *N. J. S. A.* 18A:64G–3, he was not in a

civil service classification. Nor did he enjoy any statutory tenure or the benefits of any collective bargaining agreement. Moreover, the Legislature has vested the Board of Trustees with broad general managerial control over the College's employees. In this respect, *N. J. S. A.* 18A:64G-6 provides that the Board of Trustees "shall have the power and duty to . . . appoint, remove, promote and transfer . . . officers, agents, or employees . . . and assign their duties. . . ." It would appear that generally English's employee relationship could be terminated at will by the Board of Trustees. *See College of Medicine and Dentistry of New Jersey v. Morrison,* 141 *N. J. Super.* 104, 111 (App. Div. 1976).

At common law an employer had the unbridled authority to discharge, with or without cause, an employee in the absence of contractual statutory restrictions. *Schlenk v. Lehigh Valley Railroad Co.,* 1 *N. J.* 131, 135 (1948). *Accord, Jorgensen v. Pennsylvania R. R. Co.,* 25 *N. J.* 541, 554 (1958). The same situation had existed with respect to public employees. In *Zimmerman v. Board of Education of Newark,* 38 *N. J.* 65, 70 (1962), *cert.* denied, 371 *U. S.* 956, 83 *S. Ct.* 508, 9 *L. Ed.* 2d 502 (1963), the Court commented "that such an unprotected employee relationship is not uncommon in our State today for many public employees are still in such an unprotected and uncertain employment status."

The only limitations (other than contractual or statutory) upon the right to discharge public employees are founded on constitutionally protected interests — such as freedom of speech. *Perry v. Sindermann,* 408 *U. S.* 593, 92 *S. Ct.* 2694, 33 *L. Ed.* 2d 570 (1972); *Williams v. Civil Service Commission,* 66 *N. J.* 152, 157–158 (1974); *Donaldson v. Bd. of Ed. of No. Wildwood,* 65 *N. J.* 236, 239–240 (1974). The plaintiff urges that we modify the general principle to require that just cause be shown. But, even if we were to add that element, which we do not, the record here would amply justify the Board of Trustees' judgment, in which the Appellate Division agreed, that just cause existed.

The action of the Board of Trustees in discharging the plaintiff was within its prerogative.

The judgment of the Appellate Division is modified in accordance with this opinion, and as modified, is affirmed.

*For modification and affirmance* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD — 7.

*For reversal* — None.