JO ANN LALLY, PLAINTIFF–RESPONDENT, v. COPYGRAPHICS, DEFENDANT–APPELLANT.

Argued February 9, 1981—Decided April 27, 1981.

---

*Steven S. Radin* and *Edward S. Dreskin* argued the cause for appellant (*Sills, Beck, Cummins, Radin & Tischman* and *Edward S. Dreskin,* attorneys; *Barry M. Epstein* and *Steven S. Radin,* of

counsel; *Barry M. .Epstein, Steven S. Radin* and *Daniel Louis Grossman*, on the briefs).

*Charles J. Farley, Jr.* argued the cause for respondent (*Farley & Farley*, attorneys).

*Michael S. Bokar*, Deputy Attorney General, argued the cause for Commissioner of Labor and Industry (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General of counsel).

PER CURIAM.

We affirm the Appellate Division's determination, 173 *N.J.Super.* 162, that a plaintiff has a common law right of action for wrongful discharge based upon an alleged retaliatory firing attributable to the filing of a workers' compensation claim and that, in addition to, or in lieu of, a judicial cause of action for civil redress, there are available both statutory penal sanctions in a disorderly persons proceeding in municipal court and administrative relief before the Commissioner of Labor and Industry, who has concurrent jurisdiction over such a dispute. Our affirmance is predicated substantially upon the reasons expressed in Judge Pressler's opinion for the Appellate Division.

In particular we endorse the conclusion of the Appellate Division that there exists a common law cause of action for civil redress for a retaliatory firing that is specifically declared unlawful under *N.J.S.A.* 34:15–39.1 and 39.2. The statutory declaration of the illegality of such a discharge underscores its wrongful and tortious character for which redress should be available. Such a cause of action is strongly founded in public policy which, in this case, is reflected in the statutory prohibitions themselves. See *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 66–73 (1980). Moreover, the penal and administrative remedies that are provided by *N.J.S.A.* 34:15–39.1 and 39.2 to rectify this form of illegal employment practice will clearly be augmented by recognition of an alternative or supplemental judicial right to secure civil redress.. A common law action for

wrongful discharge in this context will effectuate statutory objectives and complement the legislative and administrative policies which undergird the workers' compensation laws. The determination of the Appellate Division that the statutory treatment of this kind of retaliatory firing is not preemptive of a civil right of redress is sound. 173 *N.J.Super.* at 170–172, 179.

Additionally, although we concur in the observation of the appellate court that retaliatory discrimination "by an employer constitutes both a public and a private wrong, each of which is entitled to vindication," *id.* at 180, there are expressions in the opinion which might be understood to downgrade or minimize the suitability of administrative relief and to encourage resort to judicial remedies in preference to administrative solutions. Consequently, while we affirm the judgment below, we modify and qualify the rationale offered by the Appellate Division.

The court below apparently felt impelled to find that the administrative relief provided by *N.J.S.A.* 34:15–39.1 and 39.2 is strictly limited. It did so, seemingly, to strengthen its conclusion that there exists a viable common law cause of action for civil redress which has not been superseded by the legislative treatment. Such a civil cause of action, however, is firmly anchored as a matter of public policy upon the unlawful, wrongful, and tortious character of the proscribed conduct. *Cf. Pierce v. Ortho Pharmaceutical Corp., supra,* 84 *N.J.* at 66–73. If the Legislature had wanted to foreclose a judicial cause of action, it would have done so expressly. *Cf. Kaczmarek v. N.J. Turnpike Authority,* 77 *N.J.* 329 (1978) (under *N.J.S.A.* 34:13A–5.5(c) PERC has "exclusive power" to deal with unfair labor practices). Thus, reliance by the Appellate Division upon the alleged "inadequacy" of the administrative remedy, as proof of legislative intent not to abridge or preempt a common law remedy, was unnecessary.

We need not pass upon the soundness of the limited view of the administrative remedies expressed below. For the reasons stated below, 173 *N.J.Super.* at 177–178, we conclude that the

forms of relief specifically enumerated in the statute, namely, restoration to employment and compensation for lost wages, are clearly available to the Commissioner. This enumeration, however, is not necessarily one of strict limitation as suggested by the Appellate Division. 173 *N.J.Super.* at 180. The pertinent part of the statute reads,

> As an alternative to any other sanctions herein or *otherwise provided by law*, the Commissioner of Labor and Industry may impose a penalty not exceeding $1,000.00 for any violation of this act. (emphasis added) [*N.J.S.A.* 34:15–39.2]

It is possible that this language is potentially more expansive than or, conversely, not as intrinsically limited as, suggested by the Appellate Division. This remains an open question and, for present purposes, we need not determine the outer reaches of the Commissioner's power under this statute.[1]

Judge Pressler also expressed the belief that the judicial course of action might be preferable because "circuity" could be avoided by securing "[v]indication of both the public and private interest in [a] single proceeding." 173 *N.J.Super.* at 181. This can be taken to suggest that pursuit of administrative relief is generally disfavored and that preference should be extended to the judicial course. We reject this implication. The jurisdiction to redress an unlawful retaliatory discharge is concurrent. The election is that of the plaintiff. She may choose, at her complete discretion, an administrative route, which though arguably not as complete as a civil action in a court of law, may be less involved, time consuming, and expensive. Moreover, as pointed out by the Appellate Division, *id.* at 177, the Legislature itself recognized the expertise, experience and sensitivity of the Commissioner in these matters. An aggrieved discharged employee

---

[1] We note the recent introduction of *Assembly Bill* 403. This proposed legislation explicitly delineates the nature and scope of the administrative proceeding that may be brought before the Commissioner of Labor and Industry for a retaliatory firing. Of course, we do not here envisage any particular construction and application to be accorded such proposed legislation.

might well believe these considerations to be important in assessing which remedial path to follow.

With these observations and for all of the reasons expressed, we affirm the judgment below.

SCHREIBER, J., dissenting.

This case has its roots in an accident on March 18, 1975 in which plaintiff Jo Ann Lally was injured while working for defendant Copygraphics at its plant. She returned to work March 31 and was discharged April 11, after having been told her medical bills would not be paid.

Plaintiff filed a workers' compensation petition on the day of her discharge. Subsequently, she received a compensation award of $1870 for permanent disability and $114.29 for temporary disability.

On April 22, 1975 plaintiff submitted a verified complaint to the Division on Civil Rights charging that her employment had been "terminated because of her sex." The Division's investigation disclosed that her separation notice recited that the reason for her discharge was:

> Very careless work habits which caused her to have numerous accidents. This was a danger to fellow employees and created a potentially dangerous working environment.

After submitting this information to plaintiff, the Division closed the case, pointing out that it had no jurisdiction over discharges "because of the filing of a compensation case." This matter was concluded on July 2, 1975. On July 25, 1975 the federal Equal Employment Opportunity Commission also rejected the sex discrimination claim which plaintiff had filed with it.

In August 1975 plaintiff instituted suit in the Superior Court charging a violation of *N.J.S.A.* 34:15–39.1 and seeking compensatory and punitive damages. After hearing defendant's motion for dismissal of the complaint, the trial court ordered that the matter be transferred to the Division of Workers' Compensation for appropriate action, "damages, if any, [to be] limited to those damages prescribed under *N.J.S.A.* 34:15–39.1."

The Commissioner of Labor and Industry, following consideration of the complaint which had been transferred to the Division and his investigator's report, declined to impose the penalty permitted under *N.J.S.A.* 34:15–39.2. Plaintiff thereupon sought review in the Appellate Division of the Superior Court order of transfer and the Commissioner of Labor and Industry decision.

The Appellate Division in a divided opinion reversed, the majority holding that plaintiff could maintain a common law action for compensatory and punitive damages and that the Commissioner of Labor and Industry had the authority to order reinstatement and compensation for loss of wages. 173 *N.J.Super.* 162, 169, 178 (1980). The dissenting opinion held that the Legislature had created a judicial cause of action with an exclusive remedy of job restoration and reimbursement of lost wages in favor of an employee who had been subjected to an illegal reprisal. *Id.* at 182–186. The dissent also found that the Commissioner had not been vested with authority to order that relief. *Id.* at 186–188.

Until *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58 (1980), we adhered to the common law proposition that "an employer had the unbridled authority to discharge, with or without cause, an employee in the absence of contractual . . . restrictions," *English v. College of Medicine and Dentistry of N.J.*, 73 *N.J.* 20, 23 (1977), statutory limitations, *Nicoletta v. No. Jersey District Water Supply Comm'n*, 77 *N.J.* 145, 150 (1978), or constitutional safeguards, *Perry v. Sindermann*, 408 *U.S.* 593, 92 *S.Ct.* 2694, 33 *L.Ed.*2d 570 (1972). In *Pierce*, we adopted the principle that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 *N.J.* at 72. Declarations of such public policy could be found in legislation, administrative rules and regulations, and judicial decisions. *Id.* at 72. *Pierce* also held that a wrongfully discharged employee could maintain an action in contract or in tort in which compensatory and punitive damages might be recovered. *Id.* at 72.

Plaintiff sought damages, compensatory and punitive, because she was discharged in violation of *N.J.S.A.* 34:15–39.1. This statute enunciates a policy condemning reprisals, either by discharge or discrimination, against employees who have claimed or attempted to claim workers' compensation. The policy having been fixed and announced by the Legislature, the *Pierce* principle supports the proposition that an employee has a cause of action when discharged in retaliation for filing or asserting a right to file a claim petition under the Workers' Compensation Act.[1]

However, there must still be considered the nature and extent of that cause of action. In addition to promulgating the policy against reprisals, *N.J.S.A.* 34:15–39.1 also provides a remedy, namely, restoration to the job and compensation for lost wages. The Legislature, having established the standard of conduct which employers must follow, determined the civil relief available to employees when that standard is violated. The Legislature has fixed that relief to promote the purpose of the statute. There is nothing in the legislative history indicating a legislative intent that recovery for a judicially cognizable tort be expanded beyond recovery of loss of wages and reinstatement. The public policy enunciated in section 39.1 did not exist before enactment of the statute. In *English v. College of Medicine and Dentistry of N.J.*, 73 *N.J.* 20, 23 (1977), we held that an employer had "unbridled authority to discharge, with or without cause," in the absence of contractual, statutory or constitutional restraints. Our research discloses no decision in New Jersey or elsewhere before enactment of section 39.1 in 1966 which recognized a common law cause of action arising out of a discharge because of reprisal for filing a workers' compensation claim. The first opinion acknowledging such a cause of action was *Frampton v. Central Indiana Gas Company*, 260 *Ind.* 249, 297 *N.E.*2d 425 (1973), a decision which has been rejected by many jurisdictions.

---

[1] In *Pierce* we held that, even in the absence of a specific remedy in the statute, an employee would have a valid cause of action. 84 *N.J.* at 68.

See *Loucks v. Star City Glass Co.*, 551 *F.*2d 745 (7 Cir. 1977); *Martin v. Tapley*, 360 *So.*2d 708 (Ala.1978); *Segal v. Arrow Industries Corp.*, 364 *So.*2d 89 (Fla.App.1978); *Kelsay v. Motorola, Inc.*, 51 *Ill.App.*3d 1016, 9 *Ill.Dec.* 630, 366 *N.E.*2d 1141 (1977), rev'd 74 *Ill.*2d 172, 23 *Ill.Dec.* 559, 384 *N.E.*2d 353 (1978); *Stephens v. Justiss-Mears Oil Co.*, 300 *So.*2d 510 (La.App.1974); *Dockery v. Lampart Table Co.*, 36 *N.C.App.* 293, 244 *S.E.*2d 272 (1978), *cert.* den. 295 *N.C.* 465, 246 *S.E.*2d 215 (1978). The cause of action here was created by the statute and therefore the remedy provided therein would appear to be exclusive. *Transamerica Mortgage Advisors v. Lewis*, 444 *U.S.* 11, 100 *S.Ct.* 242, 62 *L.Ed.*2d 146 (1979) (where statutory remedy for violation of the Investments Advisers Act is rescission, an additional private cause of action for damages will not be implied). This position is harmonious with the general proposition that where a statute expressly provides for a particular remedy, a court should not read others into it in the absence of clear legislative intent.[2] See *id.* at 19–20, 100 *S.Ct.* at 247, 62 *L.Ed.*2d at 154–155; *Botany Mills v. United States*, 278 *U.S.* 282, 289, 49 *S.Ct.* 129, 132, 73 *L.Ed.*2d 379, 385 (1928) ("[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode"); *Martin v. Althoff*, 27 *Ariz.App.* 588, 557 *P.*2d 187, 190 (1976); 2A *Sutherland, Statutory Construction* (4 ed. Supp. 1980) § 55.03 at 63.

With regard to the jurisdictional issue, Judge Antell is on target in his dissenting opinion in the Appellate Division when he states that the statute does not authorize the Commissioner of Labor and Industry to order reinstatement and back pay. The organization of the statute and the language used support that position.

The act reads as follows:

---

[2]Even if a common law action had existed before enactment of the statute, the effect of the act would appear to have limited the employee's remedies to those stated in the statute. The Appellate Division's rationale that those remedies are inadequate does not justify the substitution of its judgment for that of the Legislature.

It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement. For any violation of this act, the employer or agent shall be punished by a fine of not less than $100.00 nor more than $1,000.00 or imprisonment for not more than 60 days or both. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination; provided, if such employee shall cease to be qualified to perform the duties of his employment he shall not be entitled to such restoration and compensation. [*N.J.S.A.* 34:15–39.1]

As an alternative to any other sanctions herein or otherwise provided by law, the Commissioner of Labor and Industry may impose a penalty not exceeding $1,000.00 for any violation of this act. He may proceed in a summary manner for the recovery of such penalty, for the use of the State in any court of competent jurisdiction. [*N.J.S.A.* 34:15–39.2]

Section 39.1 does not vest, expressly or impliedly, any authority in the Commissioner to order reinstatement or back pay. Nor is there any language in section 39.1 delegating any additional powers to the Commissioner. Section 39.1 refers to two remedies. The first is punitive, a fine or imprisonment or both. No one disputes that jurisdiction of such a proceeding is in a court having criminal jurisdiction. The second refers to the civil claim of the employee, reinstatement plus reimbursement for lost pay.

The Commissioner's authority is then set forth in a separate section, 39.2, "[a]s an alternative to any other sanctions herein or otherwise provided by law." It is clear that the penalty which the Commissioner may impose under section 39.2, *viz.*, enforcement of a civil penalty by summary proceeding, is separate and apart from the provisions of section 39.1. Indeed for over ten years following the statute's enactment in 1966 the Commissioner assumed he had no authority under section 39.1. If the Legislature had intended that the Commissioner have such authority, the language employed in section 39.2 would have appeared in section 39.1. No provision vests jurisdiction over actions for reinstatement and lost pay in the Division of Workers' Compensation. *Cf. N.J.S.A.* 34:15–49 (cloaking the Division with "original jurisdiction of all claims for workers' compensation benefits").

It is interesting to note that there has been introduced in the Legislature a bill amending section 39.1 which provides for proceedings before the Division of Workers' Compensation and authorizes it to take "affirmative action, including, but not limited to hiring, reinstatement or upgrading of employees, with or without back pay." *Assembly Bill* 403 (1980). When the Legislature desires to create such authority in the Division, it knows how to accomplish that purpose in an unmistakable fashion.

I would affirm the judgment of the Commissioner of Labor and Industry and remand the matter for trial to the Superior Court, Law Division, in accordance with this opinion.

*For affirmance*—Justices SULLIVAN, PASHMAN, CLIFFORD, HANDLER and POLLOCK—5.

*Dissenting*—Justice SCHREIBER—1.