**Lynwood J.R. HERRING, Appellant,**

v.

**PRINCE MACARONI OF NEW JERSEY, INC., Appellee.**

No. 85–5727.

United States Court of Appeals, Third Circuit.

Argued June 4, 1986.

Decided Aug. 29, 1986.

Roy D. Cummins (Argued), and Nancy D. Gold, Collingswood, N.J., for appellant.

Robert J. Borrelle, Voorhees, N.J., and William F. Joy, Jr. (Argued), Morgan, Brown & Joy, Boston, Mass., for appellee.

Before ADAMS, WEIS and HIGGIN-BOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final judgment of the district court for Prince Macaroni of New Jersey, Inc. ("Prince"), dismissing the complaint of appellant Lynwood J.R. Herring. For the reasons that follow, we will reverse the judgment of the district court and remand for further proceedings.

### I.

On March 8, 1983, appellant was injured in the course of his employment with Prince. Shortly thereafter, he began receiving worker's compensation benefits. Appellant alleges that on July 12, 1984, his doctor notified Prince that he could return to work as of August 1, 1984. On July 16, 1984, however, Prince sent appellant a telegram informing him that he had been discharged.

Throughout the period of his employment with Prince, appellant was a member of the Prince Employees' Union, and his relationship with Prince was governed by a series of collective bargaining agreements that provided that Prince could discharge employees for "just and proper cause." The collective bargaining agreement that came into effect on August 1, 1983 also provided that:

> An employee's seniority shall terminate and he shall no longer be considered an employee upon ...
>
> > Absence of 12 consecutive months in the case of an industrial illness or accident arising out of or in the course of employment with the employer herein.

Prince relied on this provision in discharging appellant. Appellant, however, brought this diversity suit alleging that he had been wrongfully discharged in retaliation for filing a worker's compensation claim, in violation of N.J.Stat.Ann. § 34:15–39.1 (Supp.1986).[1]

---

1. This statute provides in relevant part:
 It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement.

Appellant's complaint also contained counts alleging violations of N.J.Stat.Ann. § 34:14–44 (1959), a provision limited by its terms to public employees, as well as federal constitutional claims. Appellant later conceded that as a nonpublic employee the New Jersey statute did not apply to him, and that there was no state action involved. Accordingly, these additional counts were dismissed.

That statute does not, by its terms, create a private cause of action for damages. For that appellant relied on the newly recognized New Jersey common law cause of action for wrongful discharge in violation of public policy. *See Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980). The district court predicted, however, that if presented with the question, the Supreme Court of New Jersey would hold that employees, like appellant, who are covered by collective bargaining agreements containing "just cause" clauses, do not enjoy the common law right of action. The court went on to hold that appellant could not now proceed under § 301 of the Labor-Management Relations Act, because he had not exhausted his extra-judicial remedies. Accordingly, the district court dismissed the complaint. *Herring v. Prince Foods-Canning Div.*, 611 F.Supp. 177 (D.N.J.1985). This appeal followed.

## II.

In *Pierce v. Ortho Pharmaceutical Corp., supra,* the Supreme Court of New Jersey considered "whether we should adopt an exception to the rule allowing an employer to discharge an at will employee without cause." 84 N.J. at 61, 417 A.2d at 506. That case involved a medical doctor who was employed at will as Director of Medical Research/Therapeutics by a pharmaceutical concern, and who objected to working on development of a product containing saccharin. She alleged that she was entitled to damages for the termination of her employment because:

> The Defendant, its agents, servants and employees requested and demanded Plaintiff follow a course of action and behavior which was impossible for Plaintiff to follow because of the Hippocratic oath she had taken, because of the ethical standards by which she was governed as a physician, and because of the regulatory schemes, both federal and state, statutory and case law, for the protection of the public in the field of health and human well-being, which schemes Plaintiff believed she should honor.

84 N.J. at 64, 417 A.2d 508 (quoting the complaint).

The *Pierce* opinion surveys in some detail the rise and fall of the employment at will rule, 84 N.J. at 65–70, with particular attention to the recent recognition by many states of a "common law cause of action *for employees at will* who were discharged for reasons that were in some way 'wrongful.'" 84 N.J. at 67, 417 A.2d at 509 (emphasis added). The court observed that "[f]ormerly there was a clear delineation between employers, who frequently were owners of their own businesses, and employees. The employer in the old sense has been replaced by a superior in the corporate hierarchy who is himself an employee. We are a nation of employees. Growth in the number of employees has been accompanied by increasing recognition of the need for stability in labor relations." 84 N.J. at 66, 417 A.2d at 509. Noting the capacity of the common law to adapt to current needs, the *Pierce* court held:

> The interests of employees, employers, and the public lead to the conclusion that the common law of New Jersey should limit the right of an employer to fire an employee at will.
>
> ... Employees have an interest in knowing they will not be discharged for exercising their legal rights. Employers have an interest in knowing they can run their businesses as they see fit as long as their conduct is consistent with public policy. The public has an interest in employment stability and in discouraging frivolous lawsuits by dissatisfied employees.

84 N.J. at 71, 417 A.2d at 511. Thus, the court held that wrongfully discharged employees have a cause of action in both contract and tort, with punitive damages available under the latter theory. 84 N.J. at 72, 417 A.2d at 512. The court went on to dismiss Pierce's wrongful discharge claim, holding that she had failed to demonstrate that the research she refused to undertake was violative of any "clear mandate of public policy." 84 N.J. at 76, 417 A.2d at 514.

The district court recognized that *Pierce* was distinguishable from the present case in that it involved an at will employee, rather than—as here—an employee covered by a collective bargaining agreement containing a "just cause" provision. Noting, however, that the New Jersey courts have yet to decide whether an employee in appellant's situation has a common law cause of action for wrongful discharge, the district court turned to *Pierce* to predict how the New Jersey Supreme Court would rule:

> The decision in *Pierce* involved an at-will employee, and the entire discussion leading up to the holding dealt with the need to provide some protections for at-will employees: that is, employees who could be terminated with or without cause at any time, due to the absence of contractual provisions restricting termination to "just cause" or otherwise providing a definite term of employment. The decision is predicated, it seems on the *absence of any other remedies* for this class of employees and the realization that, in limited circumstances there must be limits to an employer's authority over its employees.

611 F.Supp. at 179 (emphasis in original).

Though we cannot dispute the district court's characterization of the discussion in *Pierce*, we have no occasion to consider whether the district court was correct in holding that *Pierce* would not be extended *generally* to contractual employees. In our view, the cause of action asserted by appellant for discharge in retaliation for making a worker's compensation claim is, if not wholly distinct from the *Pierce* cause of action, then at the very least a special subcategory that is available to both at will and contractual employees.

We find it significant that at the time of the *Pierce* decision the New Jersey Supreme Court stated that it was already "well established that an employee has a cause of action where he is discharged in retaliation for filing a worker's compensation claim, even if the worker's compensation statute does not provide such a remedy." 84 N.J. at 68, 417 A.2d at 510 (citing

*Lally v. Copygraphics*, 173 N.J.Super. 162, 413 A.2d 960 (App.Div.1980)). This statement does not suggest any limitation to at will employees, nor does the subsequent per curiam affirmance of the Appellate Division's decision in *Lally*. *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981). Nor can it be said that *Lally*, like *Pierce*, was predicated on a lack of other remedies. Indeed, it specifically notes the availability of other statutory remedies:

> [T]he penal and administrative remedies that are provided ... to rectify this form of illegal employment practice will clearly be augmented by recognition of an alternative or supplemental judicial right to secure civil redress. A common law action for wrongful discharge in this context will effectuate statutory objectives and complement the legislative and administrative policies which undergird the workers' compensation laws.

428 A.2d at 1318. It seems to us that *Lally*, insofar as it created an additional remedy, is premised on the overriding importance of protecting the right of employees—at will or otherwise—to seek worker's compensation.

More important, we think there is a logical distinction between the *Pierce* and *Lally* causes of action. *Pierce* recognized a right of action for discharges in violation of "clear mandates of public policy" that do not necessarily relate directly to employer-employee relations, as, for example, a professional code of ethics. In *Lally* and the instant case, in contrast, the plaintiffs sought damages for a discharge specifically declared to be unlawful by a statute applicable by its terms to *all* employees. "The statutory declaration of the illegality of such a discharge underscores its wrongful and tortious character for which redress should be available. Such a cause of action is strongly founded in public policy which, in this case, is reflected in the statutory prohibitions themselves." 428 A.2d at 1318. We think it is unlikely where the legislature has declared an employment practice unlawful as to all employees, and the courts have recognized an action at law

to enforce that declaration, that contractual employees as a class would, or could, be relegated to any remedies provided under their collective bargaining agreements for the selfsame illegal practices.[2]

We therefore predict that with respect to discharges in retaliation for filing worker's compensation claims, the Supreme Court of New Jersey would extend the individual right of action for damages to contractual employees covered by "just cause" clauses. We make no prediction as to whether contractual employees would generally be afforded a common law cause of action for discharge in violation of public policy.

### CONCLUSION

For the foregoing reasons, we will reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

---

**2.** Because worker's compensation rights are rooted in state law, rather than the collective bargaining agreement, and because the cause of action in question is part-and-parcel of the state's worker's compensation scheme, we do not believe it is pre-empted by federal labor law. *See also Peabody Galion v. Dollar*, 666 F.2d 1309, 1316 (10th Cir.1981) (cause of action has nothing to do with union organization or collective bargaining, nor is there tendency to conflict with federal labor law). For the same reasons, we do not agree with the district court that an employer has a right to rely on the contract grievance procedure "exclusive of any other" in this case, 611 F.2d at 180.